UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUSTAVO ROBLES,<br><br>     Plaintiff,<br><br>v.<br><br>STATE OF NEW JERSEY, *et al.*,<br><br>     Defendants. | Civil Action No. 22-05371 (JXN)(JSA)<br><br>**OPINION** |

**NEALS**, District Judge

  This matter comes before the Court by way of Defendant Tamsen Thorpe Ph.D.'s ("Dr. Thorpe" or "Defendant") motion to dismiss Plaintiff Gustavo Robles' ("Robles" or "Plaintiff") Amended Complaint (ECF No. 6) pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 72). Plaintiff opposed the motion (ECF No. 73), and Dr. Thorpe replied in further support (ECF No. 74). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 with supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims. Venue is proper pursuant to 28 U.S.C. § 1391. The Court has carefully reviewed the Amended Complaint and the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

  **I. FACTUAL AND PROCEDURAL BACKGROUND**[1]

  This matter arises from an alleged conspiracy involving thirty named defendants, including the State of New Jersey, two state court judges, court workers, and various health care providers, acting in concert to subvert Plaintiff's parental rights during the state court child custody

---

[1] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

proceedings between Plaintiff and Defendant Grecia K. Pinto ("Pinto"), the mother of Plaintiff's minor son, G.A.R. (*See generally* Amended Complaint ("Am. Compl."), ECF No. 6.) Specifically, in his Amended Complaint, Plaintiff alleges that Pinto and her "paramour" Defendant Charles Cetta, Jr. ("Cetta") fabricated evidence which led to his being "maliciously" investigated by the New Jersey Division of Child Protection and Permanency ("DCPP") for the sexual abuse of G.A.R. (Am. Compl. ¶¶ 38, 42.) Plaintiff alleges that G.A.R. was incorrectly taken at his word, and DCPP conducted a biased evaluation of him. (Am. Compl. ¶¶ 41-50.) The purpose of the investigation, which took over sixty (60) days to complete, was, in part, to determine whether Plaintiff's parental rights over G.A.R. should be restricted. (Am. Compl. ¶¶ 45, 47.)

Plaintiff claims that during the original investigation and evaluation concerning the sexual abuse allegations, which was audio and video recorded on or about September 3, 2020, the "professionals at the special victim's unit (SVU)…determined that both mother and child were not credible and that G.A.R. used non[-]age appropriate words and phrases [which] indicated he had been improperly coached." (Am. Compl. ¶ 39.) Plaintiff claims that, "[i]nstead of closing out the investigation… DCPP continued its investigation and in concert with [] Pinto and Cetta fabricated and/or exaggerated evidence against Plaintiff." (Am. Compl. ¶ 42.)

Plaintiff contends that DCPP Caseworker Suni Brown ("Brown") was part of DCPP's investigation of Plaintiff between August 2020, and February 2021. (Am. Compl. ¶¶ 7, 43.) As part of the investigation, Plaintiff claims that Brown "acknowledged that "traumatic experience therapy was to be decided between both parents and to be performed by a private practice therapist and within G.A.R.'s medical plan." (Am. Compl. ¶¶ 49.) Plaintiff further alleges that throughout DCPP's investigation, several of the named Defendants facilitated biased psychological evaluations of G.A.R., discriminated against him based on his gender and disability, post-traumatic

2

stress disorder, and continuous vertigo, which, according to Plaintiff, Defendants regarded as a mental illness, failed to investigate Pinto's and Cetta's complaint against him properly, and reached incorrect conclusions as to Pinto's and Cetta's complaint. (Am. Compl. ¶¶ 41-42, 48, 50-56, 58, 63-68, 72-76, 83-92, 99-103, 106, 114-19, 125, 129-30, 191.)

The Honorable Nina C. Remson J.S.C. ("Judge Remson") of the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, presided over Plaintiff's child custody matter from January 2021 to October of 2022. (Am. Compl. ¶ 113.) Plaintiff alleges that Judge Remson demonstrated bias against Plaintiff on the basis of his gender; he also asserts that Judge Remson accepted DCPP's recommendations of the false allegations, allowed hearsay reports and inadmissible evidence, and sanctioned the removal of GAR without a warrant or exigent circumstances. (Am. Compl. ¶¶ 114-116, 117.) Further, Plaintiff alleges that Judge Remson "implemented a 'Consent Order' entered under duress, and then did not enforce Plaintiff's requests for enforcement of litigant's rights for the child Reunification Process." (Am. Compl. ¶ 121.) Additionally, Plaintiff alleges that the Honorable Peter J. Melchionne P.J.F.P ("Judge Melchionne") "was aware that Plaintiff is an innocent father" and that the "Consent Order was structured under duress." (Am. Compl. ¶¶ 134, 136.) Finally, Plaintiff states that Judge Melchionne knew Plaintiff did not intend to waive his right to a trial hearing nor his constitutional rights. (Am. Compl. ¶ 137.)

Pursuant to the Consent Order, in June 2022, Judge Remson appointed Dr. Thorpe as the Reunification Expert in Plaintiff's child custody case. (Am. Compl. ¶¶ 16, 138.) Plaintiff alleges that Dr. Thorpe "did not follow up with her assertions that Reunification was required with G.A.R. and feared that [] Pinto would be uncooperative and would not assist in Reunification therapy." (Am. Compl. ¶ 139.) Plaintiff also alleges that Dr. Thorpe did nothing on G.A.R.'s behalf to seek

3

Reunification therapy even though G.A.R. expressed he wanted it." (*Id.*) Plaintiff sues Dr. Thorpe "in her official capacity" and claims that she "is liable for her actions done under color of state law." (Am. Compl. ¶ 16.) Plaintiff further alleges that Dr. Thorpe was "entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants." (*Id.*)

On September 1, 2022, Plaintiff filed a Complaint in this Court. (ECF No. 1.) On January 30, 2023, Plaintiff filed an Amended Complaint (Am. Compl., ECF No. 6) asserting nine causes of action against Defendants including Declaratory Relief pursuant to the federal Civil Rights Act of 1964 28 U.S.C. § 2201-2202 (Count I); violation of 42 U.S.C. § 1983 (Count II); violation of 42 U.S.C. §1983 for Monetary Relief (Count III); violation of Section 10:6-2 of the New Jersey Civil Rights Act ("NJCRA") (Count IV); Civil Conspiracy (Count V); Conspiracy pursuant to 42 U.S.C. §1985 (Count VI); Malicious Abuse of Process (Count VII); violation of Title II and III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, 12181 (Count VIII); and violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count IX). (*See* Am. Compl. ¶¶ 145-236.) Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees and costs. (*See* Am. Compl. ¶¶ 168, 174, 186, 189, 225, 236, 238.)

Defendants[2] moved to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6). (*See* ECF Nos. 31, 38, 55, 61, 71.) Plaintiff did not oppose the motions. On September

---

[2] Defendants the State of New Jersey Administration of the Courts, Glenn A. Grant, Administrative Director, Hon. Peter J. Melchionne, P.J.F.P., Hon. Nina C. Remson, J.S.C., and David Tang, Chief of Family Practice Division (the "Judiciary Defendants"); Sheila Steinbach and Constance Ritzler (the "Bergen Family Center Defendants"); Asad Hussain, Renee Kuperinksy, Michelle Thorpe, Rene Compean, and Shahan Sibtain (the "New Bridge Defendants"); Carmen Diaz-Petti, Christine Norbut-Beyer, Lori Makridakis, Lori Laverty, Gregory Maier, Suni Brown, and Shante Singletary (the "DCPP Defendants"); Stephanie Anismatta, Psy.D, Kirsten Byrnes, Psy.D, Richard Coco, Psy.D, Michelle Fanciullo, Psy.D, Brett Biller, Psy.D; Kyongok Kim, LCAT, and Michelle Mroz, LCSW (the "Audrey Hepburn Defendants").

26, 2024, the Court issued an Order granting Defendants' motions as unopposed and terminating them from this action. (*See* ECF No. 77.)

On October 2, 2023, Dr. Thorpe moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 72.)[3] Plaintiff opposed the motion (ECF No. 73), and Dr. Thorpe replied in further support (ECF No. 74). The motion is now ripe for the Court to decide.

## II. LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests[.]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted). In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id*.

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements

---

[3] The Court notes that Dr. Thorpe's motion was initially filed on March 1, 2023 (ECF No. 15), with a return date of April 3, 2023. On March 20, 2023, Plaintiff filed Rule 7.1(d)(5) Letter for an automatic extension of the return date. (ECF No. 25.) Thereafter, from April 14, 2023, to July 17, 2023, Plaintiff filed additional adjournment requests concerning the motions to dismiss filed by Dr. Thorpe her co-defendants in this action. (*See* ECF Nos. 34, 37, 40, 43, 47, 48, 53, 56, 57, 63, 64.) Consequently, on July 17, 2023, the Court issued a Text Order (ECF No. 65) providing that in the interest of efficient case management and to preclude further piecemeal extensions of briefing and adjournments of these pending motions' return date, Dr. Thorpe's motion was administratively terminated. The parties were to serve the opposition papers on or before July 24, 2023, and reply papers on or before July 31, 2023, and once all papers have been exchanged between counsel, coordinate the simultaneous, consecutive refiling of the motions in accordance with the Court's Text Order. On January 23, 2024, Plaintiff's counsel filed a letter (ECF No. 75) to the Court advising that they wrote to Plaintiff's Counsel in order to coordinate the refiling of the motion in accordance with the Court's Text Order and "[n]ot having received a response, [counsel] refiled the previously styled motion" along with Plaintiff's previously filed opposition and their reply brief.

of a cause of action will not do." *Twombly*, 550 U.S. at 555. That is, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

### III. ANALYSIS

As noted above, the Plaintiff asserts nine counts in his Amended Complaint; however, only four of the nine counts are directed against Dr. Thorpe, Declaratory Relief pursuant to the federal Civil Rights Act of 1964 28 U.S.C. § 2201-2202 (Count I); violation of 42 U.S.C. § 1983 (Count II); violation of Title II and III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, 12181 (Count VIII); and violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count IX). (*See* Am. Compl. ¶¶ 145-159, 190-236.) The Court addresses the merits of these claims below.

#### A. Plaintiff's Claim for Declaratory Relief (Count I)

Count I of the Amended Complaint purports to assert a cause of action under the Declaratory Judgment Act, 28 U.S.C. § 2201.

The Declaratory Judgment Act (the "Act") provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration,

6

whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act "is not a standalone source of rights, but a procedural vehicle for litigants to seek a declaration of their rights under some other law." *MedWell, LLC v. Cigna Corp.*, No. 20-10627, 2021 WL 2010582, at *2 (D.N.J. May 19, 2021) (citing *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013)); *see also Malhan v. Sec. U.S. Dep't of State*, 938 F.3d 453, 457 n.3 (3d Cir. 2019) ("[T]he Declaratory Judgment Act is procedural only, and presupposes the existence of a judicially remediable right. It creates a remedy, not rights." (internal quotation marks and citations omitted)); *Everest Indem. Ins. Co. v. All Risks LTD*, Civ. No. 16-3582, 2023 WL 4295778, at *4 n.8 (D.N.J. June 30, 2023) ("Declaratory judgment is a remedy, not an independent cause of action." (collecting cases)). Because Count I is premised on a form of relief rather than a cause of action, it cannot be pursued as a "standalone claim" and, accordingly, must be dismissed. *See id.*

### B. Plaintiff's 42 U.S.C. § 1983 Claim (Count II)

Section 1983 permits claims for violations of certain constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Plaintiff pursues claims against Dr. Thorpe "in her official capacity" as the court-appointed Reunification Expert in connection with the underlying state court child custody proceedings. (Am. Compl. ¶ 138, 139, 155, 168.) Plaintiff's allegations against Dr. Thorpe provide that she was

7

"entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants." (*Id*.) (Am. Compl. ¶ 16.)

Individuals charged with the duty of carrying out facially valid court orders enjoy quasi-judicial absolute immunity from liability for damages in a suit challenging conduct prescribed by that order. *See Gallas v. Supreme Court of Pennsylvania,* 211 F.3d 760, 772–73 (3d Cir. 2000). The doctrine of quasi-judicial immunity "evolved out of its well-known namesake, judicial immunity," which protects judges from liability for damages for acts committed within their judicial jurisdiction. *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018). The fair administration of justice depends not only on judges, however. *Id*. Thus, the immunity doctrine has been extended to "certain others who perform functions closely associated with the judicial process," *id*. (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)), including "those who serve as arms of the court, ... fulfill[ing] a quasi-judicial role at the court's request," *id*. (quoting *Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001) (quotation marks omitted)). This immunity extends to evaluative functions when the evaluation is done, as it plainly was here, to assist the court in its decision-making process. *See Williams v. Consovoy*, 453 F.3d 173, 178–79 (3d Cir. 2006) (licensed psychologist who evaluated inmate for state parole board and presented his findings is absolutely immunized from suit for damages).

Here, allegations in the Amended Complaint against Dr. Thorpe concern her role in providing reunification assessments and evaluations as an "arm[] of the court." *See Hughes v. Long*, 242 F.3d 127 (3d Cir. 2001). Dr. Thorpe's participation in the custody proceedings was, as a general matter, court-ordered. Further, there is nothing in Plaintiff's Amended Complaint that

credibly suggests that the actions taken by Dr. Thorpe were outside of the scope of her role as the court-appointed Reunification Expert. Plaintiff's dissatisfaction with Dr. Thorpes' actions as the court-appointed Reunification Expert does not change this fact. Dr. Thorpe accordingly enjoys the benefit of quasi-judicial immunity. *See Heffley v. Steele*, 826 F. App'x 227, 231 (3d Cir. 2020) (citing *Hughes*, 242 F.3d at 126-28) (holding that custody evaluators in family court cases are entitled to judicial immunity; discussing the judicial immunity of court-appointed counselors and therapists).

Moreover, even if Plaintiff had established that Dr. Thorpe is a state actor, his conclusory claim of liability does not amount to a viable cause of action under Section 1983 or the *Twombly* and *Iqbal* pleading standards. Plaintiff has failed to allege any plausible facts to show that the actions taken by Dr. Thorpe were not an integral part of the judicial process. Further, Plaintiff's conspiracy allegations against Dr. Thorpe, including that she conspired with other Defendants to deprive Plaintiff of access to his son, also are plainly inadequate to survive a Rule 12(b)(6) motion to dismiss. *Great Western Mining,* 615 F.3d at 176. *See also Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. Mikhail v. Kahn, 572 F. App'x 68, 72 (3d Cir. 2014). As a result, Plaintiff fails to state a claim for relief as to Dr. Thorpe under Count II.

### C. Plaintiffs Claim under Titles II and III of the Americans with Disabilities Act ("ADA") (Counts VIII)

In Count VIII of the Amended Complaint, Plaintiff alleges disability discrimination under Titles II and II of the ADA and asserts an assortment of discrimination and retaliation claims under various regulatory provisions. (Am. Compl. ¶¶ 190-225.) The Amended Complaint does not specify who among the thirty named defendants is charged with discrimination under Count VIII. (*See* Am. Compl. ¶ 209.) Plaintiff simply alleges that "Defendants have discriminated intentionally against Plaintiff in violation of Title II and III of the ADA, 42 U.S.C. § 12131 and 42 U.S.C. §

9

12181, by refusing to provide individualized treatment, auxiliary aids and services, and other accommodations and modifications necessary to ensure an equal opportunity for Gustavo Robles to participate in Defendants' programs and activities; and by using retaliation and coercion tactics against Plaintiff to exploit his disability." (Am. Compl. ¶ 210.)

Under the ADA, a person is "regarded as" having a "disability" if they have a "physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment. …" *See* 42 U.S.C. § 12102(1). Based on this definition of "disability," §§ 12132 and 12182 of the ADA prohibit discrimination in similar capacities. Section 12132 specifies that individuals with disabilities shall not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Section 12182 prohibits "discrimination by public accommodations" under multiple contexts, but Plaintiff seems only to allege discrimination under § 12182(b)(1)(A)(ii). (*See* Am. Compl. ¶¶ 207-08.) Under § 12182(b)(1)(A)(ii), it is unlawful to:

> [A]fford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

Further, each of the federal regulations that Plaintiff alleges "Defendants" violated prohibits, in some fashion, various forms of discrimination, denial of equal treatment based on disability and other grounds, and retaliation. (*See* Am. Compl. ¶¶ 201-03, 213, 217-20.)

Title II of the Act authorizes suits by private citizens for money damages against public entities that violate 42 U.S.C. § 12132. United *States v. Georgia*, 546 U.S. 151, 153 (2006). In order to state a claim for a violation of Title II of the ADA, 42 U.S.C. § 12131, *et seq*., a Plaintiff

must show that (1) they are a qualified individual; (2) with a disability within the meaning of the statute; (3) they are being excluded from participation in, or are being denied the benefits of the services, programs, or activities of a covered entity, or are otherwise being discriminated against by the covered entity; and (4) such exclusion, denial of benefits, or discrimination is by reason of their disability. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999). An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797 (1999); *see also Bowers v. NCAA*, 475 F.3d 524, 528 (3d Cir. 2007).

Also at issue in this case is Plaintiff's assertions that he was denied appropriate accommodations during state court proceedings. Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Notably, Title III of the ADA applies to private entities providing public accommodations, not to public entities. *Id.; see also* 42 U.S.C. § 12181(6) (defining "private entity" as "any entity other than a public entity (as defined in section 12131(1) of this title)").

Here, even assuming arguendo that Plaintiff's PTSD and continuous vertigo qualify as a disability under 42 U.S.C. § 12102(1), Plaintiff has not pled any facts to support a viable claim against Dr. Thorpe for discrimination or retaliation under either Title II or III of the ADA. First, the Amended Complaint does not identify a single potential act of discrimination by Dr. Thorpe. Plaintiff does not claim that Dr. Thorpe refrained from seeking reunification therapy because of his disability or identify any incidents or communications wherein Dr. Thorpe discriminated against him "based on perceived mental impairments and stereotypes." Further, the Amended Complaint provides no factual support for Plaintiff's retaliation claims against Dr. Thorpe.

Plaintiff's sole factual allegations against Dr. Thorpe are that she served as a court-appointed Reunification Expert and did not seek reunification therapy because Pinto "would be uncooperative and would not assist" with such therapy. (Am. Compl. ¶¶ 138-39.) As such, Plaintiff does not state any factual allegations to show that Dr. Thorpe discriminated against him or retaliated against him in any capacity by reason of his alleged disabilities. Accordingly, Plaintiff has failed to plead any viable cause of action under the ADA, and Count VIII is dismissed pursuant to Rule 12(b)(6).

### D. Plaintiff's Section 504 of the Rehabilitation Act Claim (Count IX)

Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability in federally funded programs or activities:

> No otherwise qualified individual with a disability in the United States shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

29 U.S.C.S. § 794(a); *Koslow v. Pennsylvania*, 302 F.3d 161, 165 (3d Cir. 2002).

The same standards govern claims brought under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the ADA, 42 U.S.C. § 12132. *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 250 (3d Cir. 2013). To prevail on such claims, a plaintiff must demonstrate that they (1) have a disability; (2) were otherwise qualified to participate in a program; (3) were denied the benefits of the program or were otherwise subject to discrimination because of their disability; and (4) that the program or activity in question receives federal financial assistance. *See Id.; see also Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 123 (3d Cir. 1998). Claims for compensatory damages under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, require a finding of intentional discrimination. *S.H.*, 729 F.3d at 250.

Here, Plaintiff failed to plead sufficient facts to state a plausible claim against Dr. Thorpe for a violation of Section 504 of the Rehabilitation Act for the same reasons as Plaintiff's claims against Dr. Thorpe under Title II of the ADA. Specifically, Plaintiff offers no factual evidence to demonstrate that this statutory provision even applies to Dr Thorpe. First, Plaintiff has not pleaded that Dr. Thorpe receives "Federal financial assistance" such that she is an actor subject to 29 U.S.C. § 794(a) (*see* Am. Compl. ¶ 229) or offer any evidence that Dr. Thorpe participates in a program that receives "Federal financial assistance." Second, Plaintiff fails to identify a specific "program or activity" under which he has been denied equal access on account of his purported disability. (Am. Compl. ¶¶ 30-31.) Third, Plaintiff fails to name a program or activity that has been created, controlled, or implemented by Dr. Tamsen Thorpe. Further, of the few factual allegations directed against Dr. Thorpe in the Amended Complaint, none of them allege that she discriminated against Plaintiff because of his disability. (*See* Am. Compl. ¶¶ 138-39.) There is no suggestion of discriminatory animus, discriminatory conduct, or deliberate indifference to Plaintiff's disability by Dr. Thorpe anywhere in the Amended Complaint. Accordingly, Plaintiff's Section 504 of the Rehabilitation Act claim (Count IX) fails and is dismissed pursuant to Rule 12(b)(6).

### E. The Remaining Defendants

The Court may *sua sponte* raise the issue of improper service of process. *See* Fed. R. Civ. P. 4(m). The only remaining defendants in this matter are Pinto and Cetta. Plaintiff initiated this action on September 1, 2022. (*See* ECF No. 1.) On January 30, 2023, Plaintiff amended his complaint. (*See* Am. Compl.) Based on Plaintiff's counsel's representation in a letter dated February 15, 2023, it appears that Pinto and Cetta were among the defendants "served prior to the end of February 14, 2023" (*see* ECF No. 11) yet, to date, Plaintiff has not submitted proof of service to the Court, and neither defendant has made an appearance on the docket. Accordingly, the Court will issue an Order directing Plaintiff to submit proof that Pinto and Cetta were properly

served by February 14, 2023, in compliance with Rule 4. If Plaintiff fails to provide such proof of service by October 11, 2024, the Amended Complaint will be dismissed without prejudice as to Pinto and Cetta pursuant to Rule 4(m) for failure to effect proper service.

## IV. **CONCLUSION**

For the foregoing reasons, Dr. Thorpe's motion to dismiss (ECF No. 72) is **GRANTED.** Additionally, Plaintiff shall submit proof of proper service as to Defendants Pinto and Cetta by no later than October 11, 2024, under pain of dismissal. An appropriate Order accompanies this Opinion.

**DATED:** September 28, 2024

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge